COUTURE, APPELLANT AND CROSS-APPELLEE, *v.* COUTURE ET AL., APPELLEES; MIAMI VALLEY HOSPITAL, APPELLEE AND CROSS-APPELLANT.

(Nos. CA 11677, CA 11678 and CA 11679 — Decided August 21, 1989.)

*Patrick J. Foley,* for appellant and cross-appellee Clarence Couture, Jr.

*Carol A. Stefanich* and *Thomas Baggott,* for appellee Bertha J. Couture.

*Dale Creech, Jr.,* for appellee and cross-appellant Miami Valley Hospital.

*Daryl R. Douple,* guardian ad litem, for Daniel Couture.

*Per Curiam.* This matter comes on

appeal from the Probate Division of the Montgomery County Court of Common Pleas. For reasons more fully explained below, we find that the order of that court should be modified to prohibit the withdrawal of nutrition and hydration from the program of health care provided to Daniel Lloyd Couture.

## I

### Chronology of Events

On April 20, 1989, twenty-nine-year-old Daniel Lloyd Couture went into a coma, allegedly as a result of a medicine he received. He has been a patient at Miami Valley Hospital in Dayton, Ohio and has remained comatose since that date. Initially, Daniel was sustained by a respirator and received nourishment and hydration (water) through a feeding tube. The respirator has now been removed and Daniel is breathing on his own.

Both Clarence and Bertha Couture (Daniel's divorced parents) filed applications to be appointed guardian of Daniel by reason of his disability. A guardianship hearing before the probate court took place on May 30 at which both applicants testified. At the conclusion of the hearing, the probate court appointed Bertha Couture Daniel's guardian.

At the time of her appointment Bertha Couture testified that it would be in the best interests of Daniel Couture to terminate use of the respirator and intertubal nutrition and hydration. Her position was taken with the advice and guidance of Daniel's physician and the agreement of other family members. Clarence Couture objected and instituted legal proceedings in several forms to oppose and prevent the proposed withdrawal.

On June 15, Clarence Couture filed a motion to remove Bertha Couture as guardian; a motion for a temporary restraining order and for a preliminary injunction preventing Bertha Couture,

Miami Valley Hospital, Dr. Stephen Frank, and the state of Ohio from removing any life support system from Daniel; and a complaint for injunctive relief enjoining the above-mentioned defendants from removing any life support system along with a request for declaratory judgment of the rights of Daniel Couture. The probate court issued a temporary restraining order the following day, to remain in effect until June 28.

A hearing before the probate court took place on June 26. The court heard evidence from Bertha Couture and her son, James, in support of the view that Daniel opposed the use of life-prolonging medical care in these circumstances. It also heard testimony from physicians concerning Daniel's illness and prognosis. The probate court overruled Clarence Couture's motion seeking to have Bertha Couture removed as guardian. The court denied the requests for preliminary and permanent injunctions. The court denied Clarence Couture's request for injunctive and declaratory relief. In its June 27 entry, the court also stated:

"* * * Bertha J. Couture, as such Guardian, is entitled to make those decisions for further treatment and care, after consulting with the ward's doctors, and which would be best for the ward and in accordance with the desires of the ward."

The court stated that the temporary restraining order previously issued would remain in effect until June 28.

On June 28, Clarence Couture filed three notices of appeal to this court. Case No. CA 11677 represents his appeal from the probate court's May 30 final judgment and order appointing Bertha Couture as guardian of Daniel. Case No. CA 11678 represents Clarence Couture's appeal from the probate court's June 27 order overruling his motion to remove Bertha

Couture as guardian. Case No. 11679 represents Clarence Couture's appeal from the probate court's June 27 order denying his request for preliminary and permanent injunctions; denying his request for injunctive and declaratory relief; entitling Mrs. Couture to make those decisions for further treatment and care of Daniel, after consulting with his doctors, which would be best for Daniel and in accordance with his desires; and allowing the temporary restraining order to expire on June 28.

On June 28, this court issued an order restraining the defendants from removing any life support system pending further court order. (The order did not, however, prohibit attempts dictated by acceptable medical standards to wean Daniel from the respirator.) On June 30, and after having heard evidence and arguments presented in open court, this court sustained Clarence Couture's motion for an injunction pending appeal. Oral argument was initially scheduled for July 31, but was later postponed until August 14, 1989, on the joint application of Clarence Couture and the hospital, without opposition by Bertha Couture.

On July 10, and upon a motion of Clarence Couture, this court ordered Case Nos. CA 11677, CA 11678, and CA 11679 consolidated.

On July 27, Miami Valley Hospital filed a notice of appeal from the probate court's June 27 order.

On August 2, 1989, Bertha Couture voluntarily withdrew as guardian, and Clarence Couture was appointed guardian of Daniel Lloyd Couture.

This matter was heard by this court in oral argument on August 14, 1989. Arguments were heard from counsel on behalf of Clarence Couture and for Bertha Couture and Miami Valley Hospital. A guardian ad litem appointed for Daniel Couture submitted his argument by brief.

## II
### Medical Issues

It is undisputed that Daniel Couture, who has been in a coma since April 20, 1989, is in a persistent vegetative state with no medically recognized prospect of recovery. His probability of recovery has been described by medical authorities as of the lowest order. There is, according to medical opinion, virtually no possibility that he will regain useful function. Counsel for Bertha Couture and Miami Valley Hospital state Daniel's chances of recovery as between one in four hundred to one in one million, or less. Counsel for Clarence Couture concedes that it is the greatest possibility that Daniel is in an irreversible coma.

A persistent vegetative state is one in which the patient is awake but unconscious. He is unable to attend to or provide for any of his needs. He is unable to sense pain. All of Daniel's needs are being met by the medical and nursing staff of Miami Valley Hospital.

When this matter was first considered by the probate court, Daniel Couture was receiving breathing assistance from a mechanical respirator and water and nutrition through a feeding tube. He has since been weaned from the respirator but continues to receive hydration and nutrition in the same manner.

At the time of the hearing on June 26, medical experts testified that Daniel's bodily systems and organs continued to function. His underlying condition had, however, created fluid on the brain. Those fluids and the pressure on the brain from them would continue to grow until death occurs as a result of failure of some major bodily system. Expert opinion held that, with continued nutrition and hydration, Daniel would continue to live only one

or two more months. Under these circumstances, medical ethics and procedure would permit withdrawal of nutrition and hydration.

## III

### Arguments of the Parties

The central and critical issue posed by this case is whether nutrition and hydration may be withdrawn prior to Daniel Couture's natural death. It has been the position of Bertha Couture that withdrawal is medically appropriate and consistent with Daniel's prior statements that he would not wish to be kept alive by artificial means. It has been the position of Miami Valley Hospital that, as withdrawal is consistent with sound medical practice and supported by the guardian and the majority of Daniel's family, the court should not prohibit it. Clarence Couture has opposed withdrawal, contending that it is inappropriate so long as Daniel remains alive.

## IV

### Guardianship Issues

Appellant Clarence Couture argues that the probate court erred in the appointment of Bertha Couture, and in its later refusal to remove her, because she expressed a willingness and intention to terminate life support systems.[1] In those proceedings, Clarence Couture asked that he be appointed in her place. He has taken the position that he will not terminate nutrition and hydration.

These issues have been rendered moot by the withdrawal of Bertha Couture and the appointment of Clarence Couture as guardian.

Appellant's assignments of error objecting to the appointment of Bertha Couture as guardian are overruled.

## V

### Termination of Nutrition and Hydration

Appellant Clarence Couture's first and second assignments of error argue that the probate court erred in not enjoining the guardian and the hospital from withdrawing life-prolonging treatment and in not directing that it be continued. They raise the same issues and will be considered together.

Each party, father, mother, and hospital,[2] has presented arguments that are sincere, well-made, and well-supported. Each is motivated by a genuine and profound sense of responsibility to Daniel Couture. The parents obviously love their son and each, in his or her own way, seeks the best course for him in tragic circumstances. The position taken by Miami Valley Hospital is grounded in sound and accepted medical ethics and is consistent with the positions of the American Medical Association and the American Academy of Neurology, the premiere professional organizations concerned with these decisions in a medical context. The hospital is willing and desires to be guided by the wishes of Daniels' family and guardian.

The hospital argues that life-prolonging medical treatment, including administration of nutrition and hydration, may be discontinued when a patient is in a persistent vegetative state without prospect of recovery and such withdrawal is consistent with his expressed wishes and the substituted judgment of a guardian. Evidence

---

[1] These arguments are presented in Assignments of Error 4 and 5. They are considered together as they involve substantially the same issues of fact and law.

[2] The guardian ad litem has joined in the position of Bertha Couture and Miami Valley Hospital.

presented to the probate court supports the conclusion that Daniel is in that condition. Evidence was also presented that Daniel would wish these forms of treatment withdrawn.

The central issue is whether the guardian and hospital may withdraw nutrition and hydration, and that question has been answered in the negative by the Ohio General Assembly. Am. Sub. S.B. No. 13 makes new provisions for a "durable power of attorney for health care." The bill, which was signed by the Governor on June 28, 1989, and which is effective September 27, 1989, enacts R.C. 1337.11 through 1337.17, providing comprehensive regulations for delegations to attorneys-in-fact of the power to refuse or withdraw health care.

R.C. 1337.13 provides in pertinent part:

"(A)(1) An attorney in fact under a durable power of attorney for health care shall make health care decisions for the principal only if the instrument substantially complies with section 1337.12 of the Revised Code and specifically authorizes the attorney in fact to make health care decisions for the principal, and only if the principal has lost the capacity to make informed health care decisions for himself. Except as otherwise provided in divisions (B) to (F) of this section and subject to any specific limitations in the instrument, *the attorney in fact may make health care decisions for the principal to the same extent as the principal could make those decisions himself if he had the capacity to do so. Except as otherwise provided in divisions (B) to (F) of this section,* in exercising his authority, the attorney in fact shall act consistently with the desires of the principal or, if the desires of the principal are unknown, *shall act in the best interest of the principal.*

"(2) This section does not affect, and shall not be construed as affecting, any right that the person designated as attorney in fact in a durable power of attorney for health care may have, apart from the instrument, to make or participate in the making of health care decisions on behalf of the principal.

"(3) Unless the right is limited in a durable power of attorney for health care, when acting pursuant to the instrument, the attorney in fact has the same right as the principal to receive information about proposed health care, to review health care records, and to consent to the disclosure of health care records.

"(B) *An attorney in fact under a durable power of attorney for health care does not have authority, on behalf of the principal, to refuse or withdraw informed consent to health care that is necessary to maintain the life of the principal, unless the principal is in a terminal condition.*

"(C) Except as otherwise provided in this division, an attorney in fact under a durable power of attorney for health care *does not have authority, on behalf of the principal, to refuse or withdraw informed consent to health care necessary to provide comfort care.* This division does not preclude, and shall not be construed as precluding, an attorney in fact under a durable power of attorney for health care from refusing or withdrawing informed consent to the provision of nutrition or hydration to the principal if, under the circumstances described in division (E) of this section, the attorney in fact would not be prohibited from refusing or withdrawing informed consent to the provision of nutrition or hydration to the principal.

"(D) An attorney in fact under a durable power of attorney for health care does not have authority to refuse or withdraw informed consent to health care for a principal who is pregnant if the refusal or withdrawal of the

health care would terminate the pregnancy, unless the pregnancy or the health care would pose a substantial risk to the life of the principal, or unless the principal's attending physician and at least one other physician determine, to a reasonable degree of medical certainty, that the fetus would not be born alive.

"(E) *An attorney in fact under a durable power of attorney for health care does not have authority to refuse or withdraw informed consent to the provision of nutrition or hydration to the principal, unless, prior to the refusal or withdrawal of that informed consent, all of the following apply:*

"(1) In the opinion of the principal's attending physician and at least one other physician, the provision of nutrition or hydration to the principal would not provide comfort to the principal.

"(2) *In the opinion of the principal's attending physician and at least one other physician, either of the following situations exists:*

"(a) *The death of the principal is imminent* whether or not nutrition or hydration is provided to the principal, and the *nonprovision of nutrition or hydration to the principal is not likely to result in the death of the principal by malnutrition or dehydration;*

"(b) If nutrition or hydration were provided to the principal, the nutrition *either could not be assimilated or would shorten the life of the principal;*

"(3) The principal's attending physician and the other physcians involved enter their opinions as described in divisions (E)(1) and (2) of this section in the health care records of the principal." (Emphasis added.)

In the foregoing provisions the state of Ohio has adopted and announced a public policy forbidding withdrawal of hydration or nutrition in a case of this kind. Though Daniel Couture is terminally ill, death is not "imminent." He may survive one to two months, according to the record. Withdrawal of nutrition and hydration would naturally result in death by malnutrition or dehydration within the span of life left to him. The public policy of Ohio, as determined by the General Assembly, is opposed to the withdrawal of nutrition or hydration under these circumstances, notwithstanding the wishes of the patient or his surrogate.

We are not here concerned with a power of attorney but with a guardianship. In construing the "best interest of the ward" requirement governing the acts of a guardian, we cannot ignore the prohibitions of R.C. 1337.13. It also speaks to the best interests of the ward. Significantly, it is concerned with matters involving the ward's *express written direction;* a guaradian's decision relying on casual oral remarks of the ward is less compelling. If the ward's express written direction to withdraw nutrition or hydration is deemed not in his best interest as a matter of law in R.C. 1337.13, so must it be in regard to oral statements of a ward to the same effect upon which a guardian appointed purusant to R.C. 2101.24 would rely. The guardian may not act to withdraw nutrition or hydration and the court may not approve that withdrawal.

Appellant Clarence Couture's first and second assignments of error are sustained.

## VI
### Statements of the Ward

Appellant Clarence Couture's third assignment of error is that the probate court erred in finding that there was any legally significant statement by the ward of a desired manner of treatment concerning life support and medical care.

Bertha Couture testified that Daniel made statements after viewing

television programs that he would not want his life prolonged by the extraordinary means of life support systems. She testified that his statements were made on several occasions over four or five years and with knowledge that his own medical problems posed that risk.

James Couture, Daniel's brother, testified that in conversations both before and after he became aware of his health problems Daniel stated that he did not want artificial systems used to prolong his life.

No evidence contrary to that offered by Bertha and James Couture was presented to the court concerning Daniel's wishes.

It is not necessary that evidence show exactly what the ward would do in the precise circumstances at hand. Application of such a standard would impose impossible burdens as it could almost never be shown that the precise circumstances were anticipated.

The standard followed by the probate court has been termed the "substituted judgment" standard. Under that standard, the guardian attempts to reach the decision that the incapacitated person would make were he able to choose. The guardian either follows the expressed directions of the ward while competent or, absent expressed directions, applies the ward's known preferences and values. An advance directive has the most probative value because it plainly reflects a prior competent choice. *In re Conroy* (N.J. 1985), 486 A. 2d 1209. Determinations of substituted judgment demand proof by clear and convincing evidence. *Leach* v. *Akron Gen. Medical Ctr.* (1980), 68 Ohio Misc. 1, 22 O.O. 3d 49, 426 N.E. 2d 809.

We cannot find that no "legally significant" statement of Daniel Couture was available to the probate court in arriving at its judgment. His statements were recounted by his mother and brother; their desire to act scrupulously in a matter of this kind is natural and obvious. Daniel's statements were clear, were made on several occasions, and were pertinent to his own known risks. Though brief (it is unlikely that any speaker would dwell at length on his own death), the statements are adequate to support the substituted judgment of the guardian.

Appellant Clarence Courture's third assignment of error is denied.

## VII
### Specificity of the Probate Court's Order

Cross-appellant Miami Valley Hospital has raised a single assignment of error, stating that the trial court erred in not specifically stating that its order of June 27, 1989 would be applicable to any successor guardian. The hospital objects that the vagueness of the order in that respect unduly complicates the hospital's ability to comply.

Because we have sustained the first and second assignments of error of appellant Clarence Couture, we will modify the order the order of the probate court. Our modifications should satisfy the concern of Miami Valley Hospital in regard to specificity and compliance.

## VIII
### Conclusion and Order

The courts of appeals have jurisdiction to modify judgments or final orders of the trial courts. Section 3, Article IV, Ohio Constitution. We believe that modification of the June 27, 1989 order of the probate court is necessary and appropriate. The nature of the case supports prompt action. The modification arises from a determination of law, not fact. The basis for the modification, R.C. 1337.11 through 1337.17, was enacted into law on June 28, 1989, after the order of the probate court. Our modification does not,

therefore, arise from the oversight by the probate court but from a further development of the law.

It is ordered, therefore, that neither the guardian of Daniel Lloyd Couture, nor Miami Valley Hospital, its agents and employees, nor any other party to this action, shall direct, permit, or take any steps to withdraw nutrition or hydration from the care administered to Daniel Lloyd Couture.

It is further ordered that any provisions of prior orders of the Probate Division of the Montgomery County Court of Common Pleas that are in conflict with the foregoing are stricken and held for naught.

It is further ordered that, subject to App. R. 22 and 26, this judgment shall become final automatically and without further order of the court ten days from this date.

It is further ordered that the temporary orders of this court entered June 30, 1989 are continued until the foregoing order is final.

*Judgment accordingly.*

BROGAN, FAIN and GRADY, JJ., concur.